# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

ERIC FRANCIS CHRISTENSEN

                         Petitioner,

   v.

SCOTT FRAKES,

                         Respondent.

Case No. C11-944-MJP-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is a state prisoner who is currently confined at the Monroe Correctional Complex. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 to seek relief from a 2005 Snohomish County Superior Court judgment and sentence. Respondent has filed an answer to the petition and has submitted relevant portions of the state court record. Petitioner has filed a response to respondent's answer. This Court, having carefully reviewed the petition, the briefs of the parties, and the state court record, concludes that petitioner's federal habeas petition should be denied and this action should be dismissed with prejudice.

## FACTUAL BACKGROUND

The evidence at trial showed that Scott and Lisa Rutledge lived in Marysville with their two sons in September 2003. At that time, a neighbor asked the Rutledges to hold his belongings, including a collectible jacket. The neighbor hoped to keep these belongings from his ex-wife, Christine Iverson. When Iverson learned the Rutledges were holding the items, she came to their home and demanded to have them. The Rutledges refused, and Iverson would not leave until ordered to do so by the police.

Ten months passed. On July 27, 2004, around midnight, Lisa woke Scott and told him there was someone banging on the front door. When Scott opened the door he saw at least three men with their faces covered. One pointed a gun at his face, and another hit his head with something hard. The men quickly bound Scott with duct tape.

The men forced Lisa to lie on the floor. They began to take things from various rooms to the living room. They found sets of keys in the kitchen, and demanded that Lisa tell them which key was for the white van outside. When they realized Lisa had actually told them the key to the red van outside, they went to Scott. Scott showed them the correct key for the white van.

The men took items from the home and loaded at least some of them into the white van. Three of the men took Scott to the white van, but only two got into the van. They drove Scott away from his house. Scott heard the men speak inside the van as though four men were involved in the robbery, not three.

At approximately 1:00 a.m., a Washington State Patrol Trooper noticed that the van had a taillight out and was driving erratically. When the trooper tried to make a traffic stop, the van drove away. The trooper gave chase for six miles, and the van eventually became stuck in brush and trees. The two robbers had fled by the time the trooper got to the van, where he freed Scott.

Back at the house, Lisa and the two children eventually stopped hearing the noises of the men moving their possessions. Fearing the men were still in the home, they did not move for at least 30 more minutes, when police arrived. By that time, their red van was also missing.

The investigation eventually led police to suspect that Christensen was one of the men involved in the break-in and robbery. A Marysville detective interviewed him and recorded the interview on tape. On the tape, Christensen admitted accompanying the men on the robbery. He said he had been with a woman named Nicole -- whose address, name and telephone number he did not know -- on the night in question. That night he got a telephone call from Mark Terrazas and Rick Upchurch. The men told him to meet with them because they

REPORT AND RECOMMENDATION - 2

needed "backup." Christensen and Nicole met with Terrazas at a gas station, and Terrazas led them to the home of Mack Hiatt. Hiatt was Iverson's husband.

According to Christensen's taped statement, when he arrived at Hiatt's home, Terrazas, Upchurch and Hiatt drank whiskey and smoked methamphetamine. Hiatt was loading a gun and talking about how he was mad at someone who insulted Iverson when she had tried to get a jacket. Hiatt said he wanted the jacket back, and that Christensen, Terrazas, and Upchurch could take anything they wanted out of the man's house once they got inside.

Christensen told police that he had not wanted to participate in the robbery, but felt forced to do so because Nicole had been taken into the house by Hiatt and told to wait with Iverson. All four men changed their clothes, and each took a bandanna. Hiatt gave the gun to Terrazas and said, "don't let me kill anybody." Then the four men rode together in a car to the Rutledge home. Christensen could not remember the make or model of the car, but Terrazas drove it and parked it just south of the Rutledge home. Christensen stated that when the other three men got out of the car and walked toward the home, he walked away. He said he heard screaming even when he got as far as a quarter mile down the road. At that point he realized he did not know where he was, so he walked back to the car and drove it away. He drove around for about an hour, before he returned to Hiatt's home.

A Marysville Police Department detective testified that, in the unrecorded portion of the interview, Christensen had said he had left the Rutledge home without the other three men when he heard police sirens. He also admitted no one had ever threatened Nicole, and that no one had indicated Nicole would be hurt if he did not help with the break-in.

The State charged Christensen and the other men with several crimes. Christensen's charges included two first degree robbery and four first degree burglary charges, as well as kidnapping and assault charges. Each of the charges carried firearm sentencing enhancements. Christensen waived the right to a jury trial, and the case was tried to the bench.

At the trial, the State presented the testimony of Scott and Lisa Rutledge, their older son, and several law enforcement officers. The court listened to Christensen's recorded interview with police. A neighbor testified that he saw a car parked just south of the Rutledge home for three to four minutes before it drove away. The car's brake lights were on during that time, indicating someone was inside the car. He did not see anyone walking down the street away from the car. He heard more than one of the car's doors close before the car drove off. A police officer testified that police found Lisa Rutledge's day planner near where the car had been. Christensen did not testify or call witnesses to do so.

The court found Christensen guilty of the robbery and burglary charges, and acquitted him of the assault and kidnapping charges. The court first announced this conclusion in an oral ruling on December 29, 2004. That oral ruling indicated the

REPORT AND RECOMMENDATION - 3

> court had rejected the State's theory that Christensen had been one of the men in the house. Rather, the court believed Christensen was guilty as an accomplice for acting as a lookout as the robberies went on.
>
> Before the court entered written findings and conclusions, Christensen moved for a new trial. He contended among other things that the evidence was insufficient. The court denied the motion on July 29, [2005]. In doing so, the court made additional oral findings. The court then entered written findings and conclusions on August 5, 2005, referencing and incorporating both sets of oral findings it had made in the earlier proceedings. At sentencing, the court sentenced Christensen on one of the burglary charges and both of the robbery charges. The court imposed a 228 month sentence, including firearm enhancements.

(Dkt. No. 18, Ex. 15 at 2-6.)

## PROCEDURAL BACKGROUND

Petitioner appealed his judgment and sentence to the Washington Court of Appeals, Division I. (*Id*., Exs. 11 and 12.) On November 13, 2006, the Court of Appeals issued an unpublished opinion affirming petitioner's convictions and sentence. (*Id*., Ex. 15.) Petitioner moved for reconsideration, but his motion was denied. (*See id*., Exs. 16 and 17.)

Petitioner next sought review by the Washington Supreme Court. (*See id*., Ex. 18.) Petitioner presented the following six issues to the Supreme Court for review: (1) the Court of Appeals' decision is in conflict with the Washington Supreme Court's decisions in *State v. Roberts* and *State v. Cronin* with respect to the law of accomplice liability; (2) the Court of Appeals' decision was contrary to the trial record; (3) the Court of Appeals erred in concluding that petitioner had gone to his co-defendants to get the car keys; (4) the trial court's finding that petitioner had committed two robberies violated double jeopardy; (5) the Court of Appeals erred in concluding that there was sufficient evidence to support two robberies; (6) the Court of Appeals erred in concluding that petitioner's statements were not taken in violation of *Miranda*. (*See id*., Ex. 18.) On December 5, 2007, the Supreme Court denied review without comment.

REPORT AND RECOMMENDATION - 4

(Dkt. No. 18, Ex. 19.) The Court of Appeals issued its mandate terminating direct review on January 25, 2008. (*Id*., Ex. 20.)

On September 14, 2007, while his direct appeal was still pending, petitioner filed a personal restraint petition in the Washington Court of Appeals. (*See id*., Ex. 21.) Petitioner asserted therein that he was denied effective assistance of trial counsel and that the trial court's findings were not sufficient to support his convictions. (*Id*.) On August 11, 2008, the Acting Chief Judge of the Court of Appeals issued an order dismissing petitioner's personal restraint petition. (*Id*., Ex. 24.) Petitioner next filed a motion for discretionary review in the Washington Supreme Court in which he asserted four claims of ineffective assistance of counsel. (*Id*., Ex. 25.) On November 24, 2008, the Supreme Court Commissioner issued a ruling denying review. (*Id*., Ex. 26.) The Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on April 8, 2009. (*Id*., Ex. 27.)

On December 19, 2008, petitioner filed a motion in Snohomish County Superior Court to modify or correct his judgment and sentence pursuant to CrR 7.8. (*Id*., Ex. 28.) The Superior Court transferred petitioner's motion to the Washington Court of Appeals for consideration as a personal restraint petition. (*Id*., Ex. 29.) On December 9, 2009, the Acting Chief Judge of the Court of Appeals issued an order dismissing the personal restraint petition. (*Id*., Ex. 32.)

Petitioner thereafter filed a motion for discretionary review of the Court of Appeals decision in the Washington Supreme Court. (*Id*., Ex. 33.) Petitioner argued therein that his equal protection rights were violated when the trial court failed to merge the two counts of robbery in sentencing petitioner. (*Id*., Ex. 33.) Petitioner also argued that his counsel rendered ineffective assistance when he failed to request an exceptional sentence below the standard range. (*Id*., Ex. 33.) The Supreme Court Commissioner issued a ruling denying review on July

REPORT AND RECOMMENDATION - 5

16, 2010, and, on October 6, 2010, the Court of Appeals issued a certificate of finality in petitioner's second personal restraint proceedings. (Dkt. No. 18, Exs. 34 and 35.) Petitioner now seeks federal habeas review of his convictions.

## GROUNDS FOR RELIEF

Petitioner identifies three grounds for relief in his federal habeas petition which may be summarized as follows: (1) there was insufficient evidence presented at petitioner's bench trial to support his conviction as an accomplice; (2) the conviction of two counts of first degree robbery violated the prohibition against double jeopardy; and, (3) the trial court violated petitioner's equal protections rights when it failed to merge the two robbery counts at sentencing.

## DISCUSSION

Respondent concedes in his answer that petitioner has properly exhausted his state court remedies with respect to each of his three grounds for federal habeas relief. Respondent argues, however, that petitioner is not entitled to relief with respect to any of the grounds asserted.

### Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

REPORT AND RECOMMENDATION - 6

"unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id*. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

## Sufficiency of the Evidence

Petitioner asserts in his first ground for relief that there was insufficient evidence presented at his bench trial to support his conviction on robbery and burglary charges on a theory of accomplice liability.

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v. California*, 491 U.S. 263, 265 (1989)(citing *In re Winship*, 397 U.S. 358, 364 (1970)). When evaluating a claim of insufficiency of the evidence, a reviewing court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. 307, 319 (1979). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n. 16.

A reviewing court must be mindful of "the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296-97 (1992). The Ninth Circuit has explained that a court reviewing a sufficiency of the evidence claim in a federal habeas action applies the standard announced in *Jackson* "with an additional level of deference" and, thus, must inquire whether the state court's application of the *Jackson* standard is objectively unreasonable. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 n.13 (9th Cir. 2005).

The state courts rejected petitioner's sufficiency of the evidence claim on direct appeal. The Washington Court of Appeals explained its conclusion as follows:

> Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. A claim of insufficiency admits the truth of the State's evidence and all of its reasonable inferences. Credibility determinations are for the trier of fact and are not subject to review. State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).
>
> A person is an accomplice of another person in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he "aids or agrees to aid such other person in planning or committing it". RCW 9A.08.020(3)(a)(ii). For a defendant's presence at the scene to support accomplice liability, the defendant must also be ready to assist in the commission of the crime. State v. Robinson, 35 Wn.App. 898, 903 671 P.2d 256 (1983).
>
> Christensen challenges several of the court's oral and written findings that show he either assisted the crimes or stood ready to do so. Taken together, the relevant findings show that Christensen agreed to help the men commit the crimes; that he went with them to the scene and remained with the car while the men committed those crimes; that while he waited for the men, he was ready to help them by serving as a lookout; that to the extent he left the car he did so to fulfill his role as a lookout; and that by driving the car away from the scene, Christensen was helping conceal evidence of the crimes.

REPORT AND RECOMMENDATION - 8

> Christensen's statement to the police supports these findings. It shows that Christensen knew of the plan, agreed to go with the other men to the Rutledge home, took a bandanna, got the keys to the car once they arrived, and returned the car to the other men after the crime. The testimony of the neighbor shows that the person who stayed outside was in the car waiting for at least three to four minutes before it left, in contradiction to Christensen's statement that he did not remain at the scene ready to assist. This evidence is sufficient to establish that Christensen agree to participate in the crimes and did so.
>
> Christensen contends the court should not have disregarded the portions of his statement to police in which he provided non-criminal explanations for his behavior. But each of these arguments is not so much a challenge to the sufficiency of the evidence underlying the court's findings as an argument that his statement was more credible than the inferences the court drew from all the evidence. We do not review such challenges.

(Dkt. No. 18, Ex. 15 at 6-7.)

The Court of Appeals, in reviewing petitioner's sufficiency of the evidence claim, properly identified the standard applicable to such claims, identified the requirements of accomplice liability under state law, and then discussed the evidence that supported the trial court's finding that petitioner was guilty as an accomplice. A review of the transcript of petitioner's trial, the transcript of petitioner's statement to the police, and the oral and written findings of the trial court satisfies this Court that the Court of Appeals' decision constituted a reasonable application of *Jackson*.

While petitioner, in his response to respondent's answer, identifies a number of specific findings by the trial court that he believes were either not supported by the evidence at trial, or were contradicted by the evidence at trial, petitioner's analysis does not give appropriate deference to the trier of fact in this case. In *West*, *supra,* the Supreme Court emphasized the deference owed to the trier of fact:

> We said [in *Jackson*] that "*all of the evidence* is to be considered in the light most favorable to the prosecution" . . . that the prosecution need not affirmatively "rule out every hypothesis except that of guilt" . . . and that a reviewing court "faced

REPORT AND RECOMMENDATION - 9

> with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*West*, 505 U.S. at 296-97 (quoting *Jackson*, 443 U.S. at 326) (citations omitted, emphasis in original).

The Court of Appeals, giving appropriate deference to the trier of fact, reasonably concluded that there was sufficient evidence in the record for the trial court to find petitioner guilty on a theory of accomplice liability. Accordingly, petitioner's federal habeas petition should be denied with respect to his sufficiency of the evidence claim.

### Double Jeopardy

Petitioner asserts in his second ground for relief that his convictions on two counts of robbery violated the prohibition against double jeopardy because there was no separate taking of property from each of the two victims. Petitioner contends that the property was taken from a common area rather than from two separate individuals and, thus, there was only one crime of robbery.

The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend V. The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after conviction, a second prosecution for the same offense after acquittal, and multiple punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994), *citing North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Where multiple punishments are imposed in a single criminal trial, the role of the Double Jeopardy Clause "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the

REPORT AND RECOMMENDATION - 10

same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977), *citing*, *Gore v. United States*, 357 U.S. 386 (1958); *Bell v. United States*, 349 U.S. 81 (1955); *and Ex parte Lange*, 18 Wall 163 (1874). *See also*, *Missouri v. Hunter*, 459 U.S. 359 (1983).

The state courts rejected petitioner's double jeopardy claim on direct appeal. The Washington Court of Appeals explained its conclusion as follows:

> The trial court likened this case to Tvedt and ruled that Christensen was properly convicted of at least two robberies: "from one victim, there was a taking of keys, from another victim, there was the taking of other property."[1] Christensen contends Tvedt does not support two robberies because neither of the Rutledges "had the key taken by force from their personal possession". [sic] Rather, Christensen argues, "the keys (like everything else in the home) were taken from a common area (a hook in the kitchen)."
>
> But the State need not show a taking from a victim's "personal possession" for each unit of robbery. Robbery can also occur when property is taken "from the presence" of a victim. After taking substantial property from Scott and Lisa Rutledge's home in their presence, the robbers demanded that Lisa Rutledge show them which key would operate the white van. The robbers then took those keys away, too. Thus, at least two takings occurred in the Rutledge home. Those takings occurred in the presence of and against the will of at least two people, each with an ownership interest in the items taken. We conclude the trial court did not violate double jeopardy by sentencing Christensen on two robbery convictions.

(Dkt. No. 18, Ex. 15 at 7-9.)

The United States Supreme Court has repeatedly held that state courts are the ultimate expositors of state law. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). A federal habeas court must therefore defer to the state courts' interpretation of state law. *Id*. The Washington Court of Appeals, in addressing petitioner's double jeopardy claim, relied upon the Washington Supreme Court's decision in *State v. Tvedt*, 153 Wn.2d 705 (2005). In *Tvedt*, the Washington Supreme Court was presented with a challenge that required it to determine the unit of

---

[1] [Court of Appeals' footnote 1] Report of proceedings (8/5/2005) at 32.

REPORT AND RECOMMENDATION - 11

prosecution for robbery under the Washington robbery statute, RCW 9A.56.190. *See Tvedt*, 153 Wn.2d at 707. The Supreme Court concluded "that the unit of prosecution for robbery is each taking of personal property from a person or from his or her presence against the person's will through the use or threat of force, violence, or injury to a person or property, regardless of the number of items taken." *Id*. at 707-08.

The Washington Court of Appeals, in the instant case, evaluated petitioner's two robbery convictions in light of the definition of the unit of prosecution identified in *Tvedt* and reasonably concluded, in light of the evidence presented at trial, that at least two "takings" occurred. As this Court owes deference to state court conclusion regarding matters of state law, and as the state courts concluded that, under state law, there were two separate offenses, the Court of Appeals' conclusion that the trial court did not violate petitioner's double jeopardy rights is neither contrary to, nor did it constitute an unreasonable application of, clearly established federal law. Accordingly, petitioner's federal habeas petition should be denied with respect to his double jeopardy claim.

<u>Equal Protection</u>

Petitioner asserts in his third ground for relief that his right to equal protection was violated when he was sentenced on two counts of robbery while a similarly situated co-defendant, Rick Upchurch, was sentenced on only one count of robbery. Petitioner notes that both he and Upchurch proceeded to trial and both were convicted of two counts of robbery, but the court that sentenced Upchurch merged the two robbery convictions so he was sentenced on only a single count of robbery whereas the court that sentenced petitioner declined to merge the convictions and, so, sentenced petitioner on two counts of robbery.

The Equal Protection Clause requires that all persons similarly situated be treated alike. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Equal protection claims concerning post-conviction sentencing and confinement are reviewed under the rational basis test. *McQueary v. Blodgett*, 924 F.2d 829, 834 (9th Cir. 1991); *Foster v. Washington State Board of Prison Terms and Paroles*, 878 F.2d 1233, 1235 (9th Cir. 1989). Under the rational relationship test, a habeas petitioner has the burden of alleging facts sufficient to establish "a prima facie case of uneven application." *McQueary*, 924 F.2d at 835. As the Ninth Circuit explained in *McQueary*, "a mere demonstration of inequality is not enough. . . . There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises." *Id*.

The Washington Court of Appeals addressed petitioner's equal protection claim in his second personal restraint petition. The Court of Appeals acknowledged that "[s]entencing disparity between co-defendants who committed the same crimes may implicate equal protection," but ultimately rejected petitioner's equal protection challenge. (*See* Dkt. No. 18, Ex. 32 at 5.) The Court noted that petitioner had failed "to undertake any meaningful analysis of the various circumstances relevant to determining whether he was similarly situated to his co-defendants." (*Id*.) The Court further noted that petitioner had not "establish[ed] the nature of the alleged disparate treatment." (*Id*.)

Petitioner, in his response to respondent's answer, emphasizes the similarities between himself and Upchurch and argues that there can be no rational basis for distinguishing between them with respect to the robbery counts. Petitioner contends that the fact that they were sentenced by different judges does not constitute a rational basis. However, as respondent correctly notes in his answer to the petition, petitioner's equal protection challenge is, at most, a

REPORT AND RECOMMENDATION - 13

claim that he was entitled to have the judge in his case apply state law governing merger of counts in the same way the judge in Upchurch's case applied it. The Ninth Circuit has explained, "the Supreme Court has long settled that the Fourteenth Amendment does not assure immunity from judicial error or uniformity of judicial decisions." *Little v. Crawford*, 449 F.3d 1075, 1082 (2006). Petitioner has, at most, alleged a misapplication of state law by the state courts. An alleged violation of state law, standing alone, does not state a cognizable ground for federal habeas relief. Accordingly, petitioner's equal protection claim must fail.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the three claims for relief asserted in his petition for writ of habeas corpus.

//

//

//

//

//

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied with respect to all claims asserted in the petition. A proposed order accompanies this Report and Recommendation.

DATED this 25th day of June, 2012.

JAMES P. DONOHUE
United States Magistrate Judge